**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| **RONNIE J. H.,** | ) |
| | ) |
|       **Plaintiff,** | ) |
| | ) |
| vs. | )   Case No. 18-CV-355-TCK-JFJ |
| | ) |
| **ANDREW M. SAUL,** | ) |
| **Commissioner of Social Security,** | ) |
| | ) |
|       **Defendant.** | ) |

**REPORT AND RECOMMENDATION**

This matter is before the undersigned United States Magistrate Judge for a report and recommendation. Plaintiff Ronnie J. H. seeks judicial review of the Commissioner of the Social Security Administration's decision finding that he is not disabled. For the reasons explained below, the undersigned **RECOMMENDS** that the Commissioner's decision denying benefits be **AFFIRMED**.

**I.     General Legal Standards and Standard of Review**

A claimant for disability benefits bears the burden of proving a disability. 42 U.S.C. § 423(d)(5); 20 C.F.R. §§ 404.1512(a), 416.912(a). "Disabled" is defined under the Social Security Act as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To meet this burden, a plaintiff must provide medical evidence demonstrating an impairment and the severity of that impairment during the time of his alleged disability. 20 C.F.R. §§ 404.1512(b), 416.912(b). A disability is a physical or mental impairment "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically

acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). "A physical impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [an individual's] statement of symptoms." 20 C.F.R. §§ 404.1508, 416.908 (effective to Mar. 26, 2017). The evidence must come from "acceptable medical sources," such as licensed and certified psychologists and licensed physicians. 20 C.F.R. §§ 404.1502(a), 404.1513(a), 416.913(a). A plaintiff is disabled under the Act only if his "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

Social Security regulations implement a five-step sequential process to evaluate a disability claim. 20 C.F.R. §§ 404.1520, 416.920; *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (setting forth five steps in detail). "If a determination can be made at any of the steps that a plaintiff is or is not disabled, evaluation under a subsequent step is not necessary." *Williams*, 844 F.2d at 750. In reviewing a decision of the Commissioner, the Court is limited to determining whether the Commissioner has applied the correct legal standards and whether the decision is supported by substantial evidence. *See Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See id.* The Court's review is based on the record, and the Court must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Id.* The Court may neither re-weigh the evidence nor substitute its judgment for that of the Commissioner. *See Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005). Even if the Court might have reached a different conclusion, the Commissioner's

decision stands if it is supported by substantial evidence. *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

## II.     Procedural History and the ALJ's Decision

Plaintiff, then a 63-year-old male, applied for Title II disability insurance benefits on May 25, 2012, alleging a disability onset date of September 15, 2011. R. 12, 136-137, 447. Plaintiff claimed he was unable to work due to conditions including depression, diabetes, and neuropathy. R. 161. Plaintiff's claim for benefits was denied initially on August 10, 2012, and on reconsideration on December 20, 2012. R. 63-66. Plaintiff then requested a hearing before an ALJ, and the ALJ conducted the hearing on August 8, 2013. R. 25. The ALJ issued a decision on September 13, 2013, denying benefits and finding Plaintiff not disabled because he was able to perform past relevant work. R. 12-21. The Appeals Council denied review, and Plaintiff appealed to the United States District Court. R. 1-3, 518-532. On August 24, 2016, the U.S. District Court Judge reversed and remanded the ALJ's decision. R. 533-540.

On remand, a different ALJ conducted a second hearing on February 7, 2017. R. 464. On February 23, 2017, the ALJ issued a second decision, again denying benefits and finding Plaintiff not disabled because he could return to past relevant work. R. 447-458. The Appeals Council declined to assume jurisdiction, and Plaintiff filed the pending appeal. R. 433-436; ECF No. 2.

In the second decision, the ALJ found that Plaintiff's date last insured was June 30, 2014, and that Plaintiff had not engaged in substantial gainful activity from his alleged onset date of September 15, 2011, to his date last insured. R. 449. At step two, the ALJ found that Plaintiff had the severe impairment of diabetes mellitus ("diabetes"). *Id.* He found that Plaintiff's medically determinable impairments of depression, hearing loss, and obstructive sleep apnea were non-severe. R. 449-452. In assessing Plaintiff's mental impairments under the "paragraph B" criteria,

3

the ALJ found that Plaintiff had no limitation in the two areas of adapting or managing oneself and understanding, remembering, or applying information, and mild limitations in the two areas of interacting with others and concentrating, persisting, or maintaining pace. R. 56. The ALJ acknowledged that Plaintiff had been found disabled by the Department of Veterans' Affairs ("VA") as of September 2011, but he gave it no weight as it was inconsistent with the evidence of record. R. 450-452. At step three, the ALJ found that Plaintiff had no impairment or combination of impairments that was of such severity to result in listing-level impairments. R. 452-453.

After evaluating the objective and opinion evidence, Plaintiff's statements, and Plaintiff's wife's statements, the ALJ concluded that Plaintiff had the residual functional capacity ("RFC") to perform the full range of light work. R. 453. Specifically, Plaintiff could lift or carry, push or pull twenty pounds occasionally and ten pounds frequently; could sit for six hours out of an eight-hour day; and could stand or walk a combined total of six hours out of an eight-hour day. Based on the testimony of a vocational expert ("VE"), the ALJ found that Plaintiff could perform past relevant work as a draftsman, as actually and as normally performed. R. 457-458. Accordingly, the ALJ concluded Plaintiff was not disabled.

**III.   Issues**

Plaintiff raises five points of error in his challenge to the denial of benefits: (1) the ALJ failed to properly consider the VA's ruling that Plaintiff was disabled; (2) the ALJ failed to include all of Plaintiff's impairments in his hypothetical question to the VE and in the RFC; (3) the ALJ did not properly evaluate the demands of Plaintiff's past relevant work at step four; (4) the ALJ's consistency analysis was flawed; and (5) the ALJ failed to develop the record by ordering a consultative examination or other medical testing. ECF No. 19.

**IV.     Analysis**

    **A.     The ALJ Reasonably Considered and Evaluated the Plaintiff's VA Disability Ratings**

Plaintiff argues that the ALJ improperly assigned "no weight" to the VA's 100% disability rating for depression. *See* R. 224-226, 450-452. In particular, Plaintiff argues that the ALJ committed reversible error when he "did not properly consider the VA's view of the severity of [Plaintiff's] depression," "mischaracterized the evidence," and "ignored the VA's disability ratings for nerve damage, hypertension, musculospiral nerve, paralysis of the sciatic nerve, and for hypertensive vascular disease." ECF No. 19 at 3 (internal quotation marks omitted).

The Commissioner is not bound by the disability finding of another administrative agency. *See Baca v. Dep't of Health & Human Servs.*, 5 F.3d 476, 480 (10th Cir. 1993). Nonetheless, another agency's determination of disability "is evidence that the ALJ must consider and explain why he did not find it persuasive." *Grogan v. Barnhart*, 399 F.3d 1257, 1262-63 (10th Cir. 2005) (citing *Baca*, 5 F.3d at 480). *See* 20 C.F.R. § 404.1512(b)(5) (stating that agency will consider "[d]ecisions by any governmental or nongovernmental agency about whether you are disabled.").[1]

The undersigned finds the ALJ satisfied his duty to explain why he gave less weight to the VA's decision. At step two, the ALJ found that Plaintiff's depression was a non-severe impairment because it did not impose more than "minimal limitation." R. 450. As part of this evaluation, the ALJ discussed the VA disability rating. R. 450-452. Specifically, the ALJ summarized the VA's letter dated May 2012, in which the VA found Plaintiff was individually unemployable as of September 15, 2011, and Plaintiff's major depressive disorder worsened from 50% to 100% severity as of October 5, 2011. R. 225, 450. The letter further granted entitlement to special

---

[1] Effective March 27, 2017, the regulations governing the Social Security Administration's review of decisions by other governmental agencies changed. *See* 82 Fed. Reg. 5864 (Jan. 18, 2017). The quoted language was in effect at the time of the ALJ's decision.

monthly compensation effective October 5, 2011, because Plaintiff was "housebound." R. 225, 451. The ALJ assigned "no weight" to the VA's decision, because the evidence in the record showed that "Plaintiff's depression-related symptoms, once beginning treatment, were brought under control rather quickly and remained so through his date last insured." R. 450.

In support of this finding, the ALJ reviewed in detail Plaintiff's mental health treatment records for the relevant period. Most notably, in August 2011, mental status observations were generally normal except for depressed mood. R. 276-277. Plaintiff's doctor started him on Sertraline (an antidepressant), and by November 2011, Plaintiff denied any irritability, mood swings, agitation, and stated "he is able to manage his depression fine." R. 257. In February 2012, Plaintiff had been taking his Sertraline without side effects and stated he was "doing fine," denying any recent depression, hopelessness, or worthlessness. R. 245-246. Plaintiff's doctor observed a euthymic mood, coherent and goal-directed speech, organized thoughts, and no psychosis. R. 246. In August 2012, Plaintiff again reported he was "happy" with medication treatment, which had no side effects. R. 329-330. In October 2012, he reported he was "doing well" and had been enjoying watching football games on weekends with his family. R. 327. His mood was euthymic and his thoughts were organized. *Id.* In August 2013, Plaintiff reported he was "doing fine," with no recent depression and occasional but improved anger. He stated he was "happy" with his current medications and treatment. R. 830. He rated his depression at four out of ten, and he stated he and his wife were going to travel (camping and taking a cruise). R. 930. Plaintiff's doctor noted his depression was stable. R. 931.

The ALJ found this evidence showed that Plaintiff was able to function with minimal problems related to his depression after getting his medications adjusted within a relatively short period of three to four months. R. 451. This evidence was also inconsistent with the 100%

disability rating due to depression and the findings of individual unemployability and being homebound. *Id.* Instead, the ALJ stated the evidence showed Plaintiff was experiencing minimal problems from his depression. R. 452. The ALJ acknowledged that Plaintiff testified at the hearing his symptoms were actually much worse than he reported to his doctors, but the ALJ found this testimony unreasonable given Plaintiff's consistent reporting of minimal symptoms to his providers. *Id.* The ALJ also noted Plaintiff's treatment fell off after 2012, with minimal mental health visits in 2013 and none in 2014. *Id.* Plaintiff's doctor had pronounced his depression stable as of 2013. *Id.* Plaintiff does not dispute any of these findings

As for the VA finding that Plaintiff was "housebound," the ALJ found no evidentiary support for this finding, given that Plaintiff reported traveling to Puerto Rico in October 2011 (R. 266), traveling to Texas to see his daughter around May 2012 (R. 239), intending to go camping and on a cruise in October 2013 (R. 930), walking five miles per day every day (R. 235), going shopping with his wife, and going square dancing weekly (R. 33-35, 172).

The ALJ satisfied his duty to explain his reasons for rejecting the VA disability determination. *Cf. Kanelakos v. Astrue*, 249 F. App'x 6, 8 (10th Cir. 2007) (reversing based on ALJ's failure to discuss reasons for rejecting VA's rating apart from noting that the standards for disability differed between the VA and the Social Security Administration). Although Plaintiff argues the ALJ should have given the VA's rating more weight, Plaintiff "has not pointed to any specific factual finding or evidence in the [VA's] disability determination that should have changed the [ALJ's] decision." *Hackett*, 395 F.3d at 1172. The undersigned finds no error.

Plaintiff raises several other arguments in this section, which may be dismissed in short order. First, Plaintiff vaguely alleges that the ALJ "mischaracterized the evidence." ECF No. 19 at 3. However, Plaintiff does not explain what evidence was mischaracterized or develop this

7

argument in any coherent way, and the argument is therefore waived. *See Bronson v. Swensen*, 500 F.3d 1099, 1104 (10th Cir. 2007) ("[C]ursory statements, without supporting analysis and case law, fail to constitute the kind of briefing that is necessary to avoid application of the forfeiture doctrine."). Second, he argues the VA disability rating should have been evaluated according to the criteria for evaluating a treating physician's opinion. Plaintiff provides no support for this argument, and he fails to explain why or how these factors should apply to VA disability ratings.

Third, Plaintiff argues the ALJ improperly rejected the VA's opinion that Plaintiff was 100% disabled due to depression, while assigning "great weight" to the opinions of the State agency reviewers, who opined that Plaintiff had no severe mental impairment, and Don Clark, M.D., who reviewed Plaintiff's records and completed a medical interrogatory regarding Plaintiff's impairments. R. 454-455, 457. *See* R. 962-968. However, the ALJ explained in great detail his reasons for rejecting the VA rating, and Plaintiff identifies no specific grounds supporting his assertion that the VA rating was entitled to greater weight than the agency reviewers' or Dr. Clark's opinions. *See* 20 C.F.R. § 404.1513a(b)(1) (ALJ must consider administrative medical findings "because our Federal or State agency medical or psychological consultants are highly qualified and experts in Social Security disability evaluation"); *Flaherty v. Astrue*, 515 F.3d 1067, 1071 (10th Cir. 2007) (a "non-examining physician's opinion is an acceptable medical source, which the ALJ [is] entitled to consider").

Fourth, Plaintiff takes issue with the ALJ's statement that, once Plaintiff began treatment for depression, his symptoms were brought under control "rather quickly." R. 450. Plaintiff contends the ALJ's wording suggests he is substituting his own medical opinion for that of a doctor. However, the ALJ went on to explain this statement by summarizing Plaintiff's medical records, which indeed show that Plaintiff's depression improved significantly within three to four

8

months after starting Sertraline. R. 450-451. The undersigned identifies no error in the ALJ's comment that three to four months is a "rather quick" improvement.

Finally, Plaintiff argues the ALJ ignored the VA's disability ratings for Plaintiff's physical conditions, including hypertension and nerve damage. Plaintiff points to diagnoses of his various physical problems in the record but fails to relate them to the VA's 2012 letter, which awarded benefits related only to depression and expressly deferred a decision on disability related to Plaintiff's diabetes. R. 224-226. Moreover, the ALJ noted VA treatment records showing an 80% disability rating in August 2011, as part of his overall discussion of the VA's medical records at step two. R. 276, 451. The undersigned identifies no error.

### B.    Plaintiff's Physical and Mental RFC Was Supported by Substantial Evidence

Plaintiff argues that, in determining the RFC, the ALJ failed to adequately consider limitations in use of his hands and feet or his mental impairments. In support of his physical limitations, Plaintiff cites clinical observations of decreased monofilament foot sensation in October 2013 and January 2015. *See* R. 853, 866. However, the ALJ noted the October 2013 monofilament findings and further indicated that Plaintiff had not been compliant with diet and exercise at that time and planned to resume walking. R. 455-456, 864. The ALJ also noted observation of slight swelling of the left foot and ankle at that visit, but otherwise normal findings. R. 456, 865-866. The ALJ concluded that Plaintiff's treatment for his neuropathy showed "minimal complaints." R. 456. He noted that Plaintiff had a generally normal diabetic foot exam in June 2012, apart from decreased monofilament sensation of the left foot, and that Plaintiff stated during the visit that he was walking five miles per day. R. 235, 237, 456. The ALJ further noted that, according to treatment records from July 2014, Plaintiff had a normal gait, good muscle tone, adequate range of motion in the extremities for his age, and no lower extremity swelling. R. 859.

9

The ALJ concluded that Plaintiff's treatment records regarding diabetes showed examination findings consistent with the ability to perform light exertion work. R. 456, 858-915. Regarding hand use, Plaintiff contends "common sense" demonstrates he cannot use his hands to operate a computer. ECF No. 19 at 10. However, Plaintiff points to no records, other than his own subjective statements, to support any limitations in the use of his hands. The objective findings provide substantial evidence supporting the ALJ's determination regarding Plaintiff's physical RFC.

Plaintiff further contends that, because of his mental limitations he cannot return to past relevant work. Plaintiff alleges he was accommodated at his last job with extra breaks, which means it was not actually past relevant work. *See* R. 37-38. However, as explained above in Part IV.A, the ALJ adequately explained his reasons for finding no mental limitations in the RFC. R. 450-452. The ALJ found Plaintiff's depression to be medically determinable but non-severe. R. 450. The ALJ further noted that Plaintiff's stated reasons for retiring ("retire or we will fire") were inconsistent with records indicating it was less urgent than alleged. R. 456. *See* R. 32. Specifically, the ALJ noted treatment records from August 2011 in which Plaintiff reported he was planning to retire from work either the following month or in the "near future." R. 269, 370. As for his alleged accommodations at work, the record does not indicate he had any special conditions regarding his work hours. Rather, Plaintiff testified at his first hearing that his taking extra breaks was one reason he was asked to retire. R. 37-38. The undersigned identifies no error in the ALJ's determination of the mental RFC.

Although Plaintiff's subjective statements provide some support for his allegations of physical and mental limitations, the issue for judicial review is whether the ALJ's decision is supported by substantial evidence, not whether Plaintiff's position is supported by substantial

evidence. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); 42 U.S.C. § 405(g). *See also Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) ("Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations.") (citation omitted). The cited testimony does not indicate the RFC is unsupported by substantial evidence or that the ALJ's assessment of the medical evidence was flawed. Plaintiff simply invites the court to re-weigh the evidence, which is not permitted. *See Hackett*, 395 F.3d at 1172.

### C. The ALJ Reasonably Found Plaintiff Could Perform Past Relevant Work

Plaintiff contends substantial evidence does not support the ALJ's step-four determination that Plaintiff could perform his past relevant work as a draftsman, as actually and generally performed. R. 457-458. The step four analysis consists of three phases. In the first phase, the ALJ must evaluate the claimant's RFC; in the second phase, "he must determine the physical and mental demands of the claimant's past relevant work"; and in the third phase, he must "determine[] whether the claimant has the ability to meet the job demands found in phase two despite the mental and/or physical limitations found in phase one." *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). "At each of these phases, the ALJ must make specific findings." *Id.* "Past relevant work" is defined as the claimant's ability to perform either (1) the "actual functional demands and job duties of a particular past relevant job"; or (2) the "functional demands and job duties of the occupation as generally required by employers throughout the national economy." *Andrade v. Sec'y of Health & Human Servs.,* 985 F.2d 1045, 1050 (10th Cir. 1993) (quoting SSR 82-61) (quotation marks omitted). The burden of proving disability remains with the claimant at step four; however, the ALJ has a duty "of inquiry and factual development." *Henrie v. United States Dep't of Health & Human Servs.,* 13 F.3d 359, 361 (10th Cir. 1993).

Plaintiff argues the ALJ's step-four analysis was deficient, because he failed to show he considered the precise physical and mental demands of his past relevant work. At the hearing, Plaintiff testified that his draftsman jobs involved computer-aided drawing and drafting for engineering projects. R. 473-476. *See also* R. 37 (describing job duties at first hearing). The VE then testified that a hypothetical person with Plaintiff's background and RFC could return to past work as a draftsman, DOT #003.362-010, and that the position is skilled with light exertion and a Specific Vocational Preparation ("SVP") of 5. R. 490-491. The VE confirmed that such work was available as listed in the DOT and as actually performed. R. 491. The ALJ asked the VE whether her testimony was consistent with the DOT, and she replied that it was. R. 491. The ALJ's conclusions were appropriate, because the ALJ is permitted to rely on the VE's testimony at phases two and three of the step-four analysis. *See Adcock v. Commissioner, SSA*, 748 F. App'x 842, 847 (10th Cir. 2018) (holding that ALJ may approvingly cite and rely on VE's testimony in support of his step-four findings at phases two and three).

Plaintiff points to no objective or opinion evidence indicating that he would be unable to perform the demands of his past relevant work, citing only his own hearing testimony regarding his physical and mental problems. The ALJ found this testimony regarding the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the evidence of record. R. 456. Plaintiff also incorrectly states the ALJ found a "severe" mental impairment. ECF No. 19 at 7. The ALJ considered Plaintiff's mental impairments but found them non-severe, as the ALJ explained in detail at step two of the analysis. R. 449-452.

Moreover, because the ALJ stated that Plaintiff could return to the draftsman job "both as actually performed and as normally performed," it was not necessary for Plaintiff to describe his past work in greater detail than he did. R. 458. It is the claimant's burden to prove he cannot

return to either his particular former job or the job as generally performed in the national economy. *See Andrade*, 985 F.2d at 1051; *Dumas v. Colvin*, 585 F. App'x 958, 960 (10th Cir. 2014) (affirming district court's ruling that, "even if the ALJ erred in determining Mr. Dumas retained the RFC for the line attendant job as he had actually performed it, any error was harmless because the ALJ also determined that Mr. Dumas could return to the line attendant job as the job is generally performed in the national economy"). The ALJ satisfied his duty to make an "informed comparison between past work requirements and the claimant's functional limitations" as part of the step-four determination. *James v. Chater*, 96 F.3d 1341, 1342 n.2 (10th Cir. 1996), *overruled on other grounds by Sims v. Apfel,* 530 U.S. 103 (2000). The undersigned concludes that ALJ committed no error in the step-four evaluation.

      **D.**      **The ALJ's Consistency Analysis Was Supported by Substantial Evidence**

Plaintiff argues the ALJ's consistency analysis was improper. In evaluating a claimant's symptoms, the ALJ must determine whether the claimant's statements about the intensity, persistence, and limiting effects of symptoms are consistent with the objective medical evidence and other evidence of record. SSR 16-3p, 2016 WL 1119029, at *7. If they are consistent, then the ALJ "will determine that the individual's symptoms are more likely to reduce his or her capacities to perform work-related activities." *Id.* If they are inconsistent, then the ALJ "will determine that the individual's symptoms are less likely to reduce his or her capacities to perform work-related activities." *Id.* Factors the ALJ should consider in determining whether a claimant's pain is in fact disabling include the claimant's attempts to find relief and willingness to try any treatment prescribed; a claimant's regular contact with a doctor; the possibility that psychological disorders combine with physical problems; the claimant's daily activities; and the dosage, effectiveness, and side effects of the claimant's medication. *Keyes-Zachary v. Astrue*, 695 F.3d

1156, 1167 (10th Cir. 2012); *see also* SSR 16-3p at *7 (listing similar factors); 20 C.F.R. § 404.1529(c)(3).[2]

Consistency findings are "peculiarly the province of the finder of fact," and courts should "not upset such determinations when supported by substantial evidence." *Cowan v. Astrue*, 552 F.3d 1182, 1190 (10th Cir. 2008) (quoting *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995)). As long as the ALJ sets forth the specific evidence he relies on in evaluating the consistency of the claimant's subjective complaints with other evidence, the ALJ "need not make a formalistic factor-by-factor recitation of the evidence." *Keyes-Zachary*, 695 F.3d at 1167 (quotations omitted). "[C]ommon sense, not technical perfection, is [the reviewing court's] guide." *Id*.

Here, Plaintiff alleges the ALJ erred by relying too heavily on Plaintiff's activities of daily living in support of his conclusion that Plaintiff can perform light exertion work. Plaintiff testified or reported in the record that he mows his lawn for three hours weekly, does laundry and chores daily, takes his wife square dancing weekly, shops with his wife for three hours weekly, watches football games with family on weekends, walks for 5 miles per day, drives, and travels. *See* R. 33-35, 170-172, 235, 239, 266, 327, 456, 930. Contrary to Plaintiff's argument, it is proper for the ALJ to consider Plaintiff's activities in evaluating his complaints. *See* SSR 16-3p, at *7 (stating that ALJ should consider claimant's daily activities as part of consistency analysis). Plaintiff contends the ALJ failed to consider the limits of the daily activities he could perform, such as missing square dancing once per month because he did not "feel like going" for psychological reasons, no longer doing woodworking, and stumbling while walking approximately once a week.

---

[2] This evaluation, previously termed the "credibility" analysis, is now termed the "consistency" analysis. *See* SSR 16-3p (superseding SSR 96-7p). In practice, there is little substantive difference between a "consistency" and "credibility" analysis. *See Brownrigg v. Berryhill*, 688 F. App'x 542, 545-46 (10th Cir. 2017) (finding that SSR 16-3p was consistent with prior approach taken by Tenth Circuit). Therefore, Tenth Circuit decisions regarding credibility analyses remain persuasive authority.

14

33-35. Plaintiff further testified that he needed to nap for 60 to 90 minutes per day, stayed in bed all day at least once a week due to depression, and could not lift more than 20 pounds due to back pain. R. 41, 44, 45. However, the ALJ accurately listed Plaintiff's activities as he reported in his testimony and throughout the record. The ALJ was not required, as Plaintiff alleges, to establish that Plaintiff was performing such activities for eight hours a day.

Plaintiff additionally argues that the ALJ mischaracterized the record regarding consistency when he noted that Plaintiff told the VA "that his medications were working just fine, he just wanted to start getting them through the [VA]." R. 456. Plaintiff cites page 368 of the record, which the ALJ cited in the preceding sentence of the decision, as evidence that the ALJ mischaracterized the record. Plaintiff is correct that page 368 of the record indicates Plaintiff reported feeling "hopeless, sad, worried, irritable, loss of interest, diminished energy and focus" at a VA visit in August 2011. R. 368. However, it appears the ALJ's note is referencing page 374 of the record, which summarizes a telephone call with a VA representative in July 2011. In that call, Plaintiff reported that he wanted to establish care with the VA for treatment of depression. R. 374. The nurse's summary further states, "[Patient] denies any [suicidal ideation/homicidal ideation] he reports he is just wanting to get all his care thru the VA and is needing to get established with the VA. [Patient] reports he is doing 'pretty good' on his current medication." *Id.* Accordingly, the ALJ did not mischaracterize the record.

Finally, Plaintiff contends in this section that the ALJ improperly gave "no weight" to the opinions of Plaintiff's wife, as she reported in a Third-Party Function Report. R. 187-194, 457. Plaintiff argues the ALJ mischaracterized his wife's statement that Plaintiff did not perform personal care tasks. *See* R. 188, 457. The ALJ gave no weight to her opinions, in part, because she reported Plaintiff did not personal care tasks, while the objective findings indicate that he is

15

well groomed. Plaintiff's wife's report in this regard is actually somewhat unclear. Specifically, she wrote, "does not," next to each of the areas of personal care and failed to check the box indicating "no problem with personal care." R. 188. However, the question in that section states, "Explain how the illnesses, injuries, or conditions affect this person's ability to" perform in areas of personal care. R. 188. Therefore, her response could indicate that Plaintiff had no problems in those areas. However, any potential error in this regard is harmless. Even if the ALJ misread Plaintiff's wife's statements in this section, the ALJ provided two other reasons for assigning no weight to her opinion, which Plaintiff does not challenge. R. 457. *See, e.g., Pickup v. Colvin*, 606 F. App'x 430, 433-34 (10th Cir. 2015) (affirming ALJ's credibility determination despite finding two of the reasons given by ALJ were not supported by substantial evidence).

In sum, Plaintiff's consistency arguments are unavailing, and the ALJ's discussion of Plaintiff's subjective complaints and the objective evidence satisfies SSR 16-3p. The ALJ gave specific reasons for finding Plaintiff's statements regarding the severity of his symptoms to be inconsistent with the other evidence of record, as well as Plaintiff's own statements regarding his activities of daily living. R. 450-452, 454-456. The ALJ reasonably concluded that the record evidence undermined Plaintiff's allegations regarding the severity of his symptoms. The court may not re-weigh the evidence, as Plaintiff invites the court to do. *See Hackett*, 395 F.3d at 1172; *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (the court "may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo") (quotation and alterations omitted).

  **E.**  **The ALJ Did Not Err By Failing to Obtain a Consultative Exam or Other Testing**

Plaintiff contends the ALJ erred by failing to order a consultative exam or otherwise develop the record through additional testing.

> The ALJ has a basic obligation in every social security case to ensure that an adequate record is developed during the disability hearing consistent with the issues raised. This is true despite the presence of counsel, although the duty is heightened when the claimant is unrepresented. The duty is one of inquiry, ensuring that the ALJ is informed about facts relevant to his decision and learns the claimant's own version of those facts.

*Cowan v. Astrue*, 552 F.3d 1182, 1187 (10th Cir. 2008) (quoting *Henrie v. U.S. Dep't of Health & Human Servs.*, 13 F.3d 359, 360–61 (10th Cir.1993)). The ALJ "does not have to exhaust every possible line of inquiry in an attempt to pursue every potential line of questioning;" instead, the "standard is one of reasonable good judgment." *Hawkins v. Chater*, 113 F.3d 1162, 1168 (10th Cir. 1997).

An ALJ may elect to develop the record by obtaining a consultative exam. *See* 20 C.F.R. § 404.1519a(b) (explaining that "[w]e may purchase a consultative examination to try to resolve an inconsistency in the evidence, or when the evidence as a whole is insufficient to allow us to make a determination or decision on your claim" and providing examples of instances that may require a consultative exam). A consultative exam "is often required" where (1) there is a direct conflict in the medical evidence requiring resolution, (2) the medical evidence in the record is inconclusive, or (3) additional tests are required to explain a diagnosis already contained in the record. *Hawkins*, 113 F.3d at 1166. The Tenth Circuit has held that an "ALJ should order a consultative exam when evidence in the record establishes the reasonable possibility of the existence of a disability and the result of the consultative exam could reasonably be expected to be of material assistance in resolving the issue of disability." *Id.* at 1169. Generally, an ALJ has "broad latitude in ordering consultative examinations." *Id.* at 1166.

In this case, the administrative record demonstrates that none of these situations applies. The record documents Plaintiff's course of treatment for the period between September 2010 and October 2016 – encompassing the year prior to Plaintiff's alleged disability onset date and two

17

years of treatment beyond the date last insured – and contain extensive notes documenting Plaintiff's diabetes and depression. R. 227-304, 318-395, 398-432, 690-961. Plaintiff points to no material conflict in the medical evidence, inconclusive treatment notes or tests, or untreated diagnoses that require additional explanation. Plaintiff contends testing is necessary to assess the severity of his mental impairments, nerve damage, diabetes-related fatigue, and back pain. ECF No. 19 at 14-15. Plaintiff fails to show, however, that the evidence in this regard is inconclusive or that testing is necessary to explain these diagnoses. Additionally, any questions raised about the severity of Plaintiff's impairments are related not to any deficiencies in the medical record but rather to Plaintiff's own inconsistent statements, which the ALJ addressed in his consistency analysis, and to the VA's disability determination, which the ALJ discussed in detail and found unpersuasive.

The undersigned finds the ALJ did not commit error by failing to obtain a consultative exam or other testing to assess Plaintiff's physical or mental limitations. Contrary to Plaintiff's argument, the ALJ did not need a specific "RFC" opinion to assess Plaintiff's functional limitations. *See Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012) (explaining that "there is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question"); *Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004) ("The ALJ, not a physician, is charged with determining a claimant's RFC."); 20 C.F.R. § 404.1527(d)(2) (explaining that, while an ALJ considers medical opinions in assessing RFC, the final responsibility for determining an RFC is reserved to the ALJ). The burden to fully develop the record was met in this case, and the ALJ had more than sufficient information to determine Plaintiff's RFC based on treatment records, agency opinions, and other non-medical evidence. *See generally Cowan*, 552 F.3d at 1187 (finding "no need" to develop record with

consultative exam because "sufficient information existed" for ALJ to make disability determination). Plaintiff's desire for a more developed record is not an adequate reason to re-weigh the evidence or remand an ALJ's decision that is supported by substantial evidence.

## RECOMMENDATION

The undersigned **RECOMMENDS** that the Commissioner's decision be **AFFIRMED.**

## OBJECTION

In accordance with 28 U.S.C. § 636(b) and Federal Rule of Civil Procedure 72(b)(2), a party may file specific written objections to this report and recommendation. Such specific written objections must be filed with the Clerk of the District Court for the Northern District of Oklahoma by January 21, 2020.

If specific written objections are timely filed, Federal Rule of Civil Procedure 72(b)(3) directs the district judge to

> determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.

*Id.*; *see also* 28 U.S.C. § 636(b)(1). The Tenth Circuit has adopted a "firm waiver rule" which "provides that the failure to make timely objections to the magistrate's findings or recommendations waives appellate review of both factual and legal questions." *United States v. One Parcel of Real Property*, 73 F.3d 1057, 1059 (10th Cir. 1996) (quoting *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991)). Only a timely specific objection will preserve an issue for *de novo* review by the district court or for appellate review.

SUBMITTED this 7th day of January, 2020.

_____
JODI F. JAYNE, MAGISTRATE JUDGE
**UNITED STATES DISTRICT COURT**