# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| RONNIE JOE HILLSBERRY, | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 18-CV-355-TCK-JFJ |
| | ) |
| ANDREW SAUL, Commissioner | ) |
| of Social Security Administration, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

Before the Court is the Report and Recommendation of United States Magistrate Judge Jodi F. Jayne on the judicial review of a decision by the Commissioner of the Social Security Administration denying Social Security disability benefits and the Objections thereto filed by plaintiff, Ronnie Joe Hillsberry. Docs. 23, 24. The Magistrate Judge recommended the Commissioner's decision be affirmed. Plaintiff objects to the recommendation, arguing that the Magistrate improperly failed to find the ALJ erred in his evaluation of the Veterans Administration ("VA") disability determination; in his determination of Plaintiff's physical and mental residual functional capacity ("RFC"); in determining Plaintiff can perform his past relevant work; in his consistency evaluation; and in his failure order a consultative examination or other testing.

## I. Standard of Review

Pursuant to Fed. R. Civ. P. 72(b)(3), "[t]he district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." However, even under a de novo review of such portions of the Report and Recommendation, this court's review of the Commissioner's decision

is limited to a determination of "whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* It is more than a scintilla, but less than a preponderance. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). The court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *White v. Barnhart*, 287 F.3d 903, 905 (10th Cir. 2001) (quoting *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991)). Even if the court would have reached a different conclusion, the Commissioner's decision stands if it is supported by substantial evidence. *Hamilton v. Sec'y of Health & Human Servs.,* 961 F.2d 1495, 1500 (10th Cir. 1992).

A claimant for disability benefits bears the burden of proving a disability. 42 U.S.C. § 423(d)(5); 20 C.F.R. §§ 404.1512(a), 416.912(a). A disability is a physical or mental impairment "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). "Disabled" is defined under the Social Security Act as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To meet this burden, plaintiff must provide medical evidence of an impairment and the severity of that impairment during the time of her alleged disability. 20 C.F.R. §§ 404.1512(b), 416.912(b). "A physical impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [an individual's] statement of symptoms." 20 C.F.R. §§ 404.1508, 416.908. The evidence must come from "acceptable medical sources," such as licensed and

certified psychologists and licensed physicians. 20 C.F.R. §§ 404.1513(a), 416.913(a). A plaintiff is disabled under the Act only if his "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work in the national economy." 42 U.S.C. § 423(d)(2)(A).

Social Security regulations implement a five-step sequential process to evaluate a disability claim. 20 C.F.R. §§ 404.1520, 416.920; *Williams v. Bowen,* 844 F.2d 748, 750-51 (10th Cir. 1988) (setting forth the five steps in detail). The claimant bears the burden of proof at steps one through four. *Williams*, 844 F.2d at 751 n. 2. At step one, a determination is made as to whether the claimant is presently engaged in substantial gainful activity. *Id.* at 750. At step two, a determination is made whether the claimant has a medically determinable impairment or combination of impairments that significantly limit his ability to do basic work activities. *Id.* at 751. At step three a determination is made whether the impairment is equivalent to one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. *Id.* If it is, the claimant is entitled to benefits. *Id.* If it is not, the evaluation proceeds to the fourth step, where the claimant must show that the impairment prevents him from performing work he has performed in the past. *Id.* If the claimant is able to perform his previous work, he is not disabled. *Id.* If he is not able to perform his previous work, then the claimant has met his burden of proof, establishing a prima facie case of disability. The evaluation process then proceeds to the fifth and final step: determining whether the claimant has the RFC[1] to perform other work in the national economy in view of his age, education, and work experience.

---

[1] A claimant's RFC to do work is what the claimant is still functionally capable of doing on a regular and continuing basis, despite his impairments: the claimant's maximum sustained work capability. *Williams,* 844 F.2d at 751.

*Id.* The Commissioner bears the burden at step five, and the claimant is entitled to benefits if the Commissioner cannot establish that the claimant retains the capacity "to perform an alternative work activity and that this specific type of job exists in the national economy." *Id.* (citation omitted).

**II. Background**

Plaintiff, then age 63, applied for Title II disability insurance benefits on May 25, 2012, alleging a disability onset date of September 15, 2011. R. 12, 136-137, 447. Plaintiff claimed he was unable to work due to conditions including depression, diabetes and neuropathy. R. 161. Plaintiff's claim for benefits was denied initially on August 10, 2012, and on reconsideration on December 20, 2012. R. 63-66. Plaintiff requested a hearing before an ALJ, and the ALJ conducted the hearing on August 8, 2013. R. 25. The ALJ issued a decision on September 13, 2013, denying benefits and finding Plaintiff was not disabled because he was able to perform past relevant work as a draftsman. R. 12-21. The Appeals Council denied review, and Plaintiff appealed to the United States District Court. R. 1-3, 518-532. On August 24, 2016, the U.S. District Court for the Northern District of Oklahoma reversed and remanded the ALJ's decision. *See* 15-CV-211-CVE. R. 533-540.

On remand, another ALJ conducted a second hearing on February 7, 2017. R 464-493. On February 23, 2017, the ALJ issued a decision again finding Plaintiff was not disabled because he could return to past relevant work, and denying benefits. R. 447-458. The Appeals Council declined to assume jurisdiction, and Plaintiff filed the pending appeal. R. 443-436; Doc. 2.

Plaintiff asserts the Social Security Administration's decision should be overturned because: (1) the ALJ failed to properly consider the VA's ruling that he is disabled; (2) the ALJ failed to include all of Plaintiff's impairments in his hypothetical question to the VA and in the

RFC; (3) the ALJ failed to properly evaluate the demands of Plaintiff's past relevant work at step four; and (4) the ALJ's consistency analysis was flawed; and (5) the ALJ failed to develop the record by ordering a consultative examination or other medical testing. Doc. 19.

## III. Analysis

### A. Consideration of VA's Disability Ratings

Plaintiff contends the ALJ erred at step two in assigning "no weight" to the VA's 100 percent disability rating based on his depression. R. 224-226, 450-452. He argues the ALJ committed reversible error when he failed to "properly consider the VA's view of the severity of [Plaintiff's] depression, mischaracterized the evidence," and "ignored the VA's disability ratings for nerve damage, hypertension, musculospiral nerve, paralysis of the sciatic nerve, and for hypertensive vascular disease." Doc. 19 at 3.

Although the Commissioner is not bound by the disability finding of another administrative agency, the other agency's determination of disability is "evidence that the ALJ must consider and explain why he did not find it persuasive." *Grogan v. Barnhart*, 399 F.3d 1257, 1262-63 (10th Cir. 2005) (citing *Baca v. Dep't of Health & Human Servs.*, 5 F.3d 476, 480 (10th Cir. 1993); 20 C.F.R. § 404.1512(b)(5) (stating that agency will consider "[d]ecisions by any governmental or nongovernmental agency about whether you are disabled.").[2] Plaintiff argues that the ALJ failed to consider and explain why he did not find the VA determination persuasive.

At step two, the ALJ found that Plaintiff's depression was a non-severe impairment because it imposed no more than "minimal limitation." R. 450. The ALJ discussed the VA's May 2012 letter finding that Plaintiff was individually unemployable as of September 15, 2011;

---

[2] As the Magistrate Judge noted, the regulations governing the Social Security Administration's review of decisions by other governmental agencies changed effective March 27, 2017. See Fed. Reg. 5864 (Jan. 18, 2017). The quoted language was in effect at the time of the ALJ's decision.

acknowledged that the VA determined Plaintiff's major depressive disorder worsened from 50 percent to 100 percent severity as of October 5, 2011; and granted him entitled to special monthly compensation effective October 5, 2011, because Plaintiff was "housebound." R. 225, 451. However, the ALJ explained that he assigned "no weight" to the VA's decision, because the evidence in the record showed that "Plaintiff's depression-related symptoms, once beginning treatment, were brought under control rather quickly and remained so through his date last insured." R. 450.

The ALJ noted that the Department of Veterans' Affairs issued a finding of individual unemployability with respect to Plaintiff on September 15, 2011, and major depressive disorder increased from fifty percent to one hundred percent as of October 5, 2011. *Id.* However, he observed that after Plaintiff was started on Zoloft in August 2011, and with some medication adjustments in the following couple of months, "by November 1, 2011 . .. the Plaintiff told Dr. Roman that he denied any irritability, mood swings, agitations, and stated that 'he is able to manage his depression fine.'" R. 450-451. And at a visit on February 14, 2014, the Plaintiff told the doctor that he was "doing fine" and denied any recent hopelessness or depression, and his mood was described as euthymic. R. 451. The ALJ also stated that in subsequent visits through August 12, 2013, Plaintiff continued to report that he was "doing fine" and was "happy" with his current medications and treatment," and Dr. Roman noted his depression was "stable." *Id.* The ALJ concluded:

> Looking at the above, it shows an individual who after getting medications adjusted within a relatively short period (three to four months) he was able to function with minimal problems related to his depression. In fact, it appears that he actually improved per his reports and Dr. Roman's notes after beginning medication treatment with Dr. Roman. Once getting his medications correct, the claimant began having minimal symptoms from his depression and was at the point of saying it was under control within a short period of time and rated at four out of ten as of October 2012 (two months after beginning medications) and Dr. Roman

pronounced it as stable with the same report of four out of ten depression in August 2013 (Exhibit 12F) the last visit prior to the date last insured.

*Id.* The ALJ acknowledged that at the hearing, Plaintiff "testified that he was actually much worse and that he did not always report everything to the doctors about his depression due to pride," but stated, "[G]iven the generally consistent nature which he reports minimal symptoms to his providers over the relevant time period, that does not seem reasonable." *Id.* at 452.

Based on its review of the record, the Court concludes that the ALJ did not err in rejecting the VA's finding Plaintiff was unemployable.

### B. Physical and Mental RFC

Plaintiff argues that the ALJ erred in his determination of Plaintiff's physical RFC and his mental RFC.

With respect to the physical RFC, Plaintiff cited clinical observations of decreased monofilament foot sensation in October 2013 and January 2015. *See* R. 853, 866. In his decision, the ALJ acknowledged the October 2013 monofilament findings but observed that at that time, Plaintiff's diabetes mellitus was uncontrolled, and Plaintiff had not been compliant with diet and exercise. R. 455-456, 864. The ALJ stated that on July 15, 2014, Plaintiff had a normal gait, good muscle tone and adequate range of motion in his extremities for his age. R. 456. The ALJ concluded that while "claimant had many complaints about diabetes mellitus peripheral neuropathy and the records do note decreased sensation in his feet . . . treatment for this really shows minimal complaints." *Id.* He concluded that Plaintiff's diabetes treatment records showed examination findings consistent with the ability to perform light exertion work. R. 456, 858-915.

Plaintiff also contends the light exertion work RFC does not take into account problems he has with his hands. Doc. 19. Specifically, during his hearing, Plaintiff complained he has very little feeling in his hands, has problems using them for writing, and can no longer do woodworking.

R. 36, 42, 173. However, the record is devoid of any medical records backing up his claim of limitations in the use of his hands.

Accordingly, the Court concludes that the ALJ's determination of Plaintiff's physical RFC is supported by substantial evidence.

**C. Finding That Plaintiff Can Perform His Past Relevant Work**

Plaintiff argues that the ALJ, in determining he could return to his previous work as a draftsman, failed in his duty to determine the precise physical and mental demands of that work. Doc. 24 at 6.

The step four analysis consists of three phases. In the first phase, the ALJ must evaluate the claimant's RFC; in the second phase, he must determine the physical and mental demands of the claimant's past relevant work; and in the third phase, he must "determine whether the claimant has the ability to meet the job demands found in phase two despite the mental and/or physical limitations found in phase one." *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). The ALJ is obligated to make an "informed comparison between past work requirements and the claimant's functional limitations" as part of the step-four determination. *James v. Chater*, 96 F.3d 1341, 1342 n. 2 (10th Cir. 1996), *overruled on other grounds by Sims v. Apfel*, 530 U.S. 103 (2000).

Plaintiff contends that although the ALJ found he suffers from "severe mental impairments," he failed to properly account for them in the hypothetical questions to the vocational expert and in the decisional RFC. Doc. 19 at 7. As previously noted, however, the ALJ found that Plaintiff's depression was nonsevere. Moreover, Plaintiff relies solely on his own hearing testimony regarding his mental and physical problems, and has identified no objective or opinion evidence indicating that he would be unable to perform the demands of his past relevant work. The ALJ acknowledged Plaintiff's testimony, but after thoroughly discussing inconsistencies

between that testimony and the record, determined that claimant's statements concerning the intensity, persistence and limiting effects of the symptoms were not entirely consistent with the medical evidence and other evidence in the record. R. 456.

Moreover, it is the claimant's burden to prove he cannot return to his former job or the job as generally performed in the national economy. *Dumas v. Colvin*, 585 Fed. Appx 958, 960 (10th Cir. 2014) (affirming district court's ruling that "even if the ALJ erred in determining Mr. Dumas retained the RFC for the line attendant job as he had actually perform it, any error was harmless because the ALJ also determined that Mr. Dumas could return to the line attendant job as the job is generally performed in the national economy"). Additionally, the ALJ determined that Plaintiff could return to the draftsman job "both as actually performed and normally performed in the national economy," within the limitations identified in the RFC. R. 457-458.

The Court concludes that the ALJ satisfied his duty to make an "informed comparison between past work requirements and the claimant's functional limitations as part of the step four determination. *James v Chater*, 96 F.3d 1341, 1342 n. 2 (10th Cir. 1996), *overruled on other grounds by Sims v. Apfel*, 530 U.S. 103 (2000).

**D. Analysis of Plaintiff's Subjective Complaints**

Plaintiff argues that the ALJ failed to reasonably evaluate his subjective complaints in determining he had the RFC for light work from the alleged onset date of September 15, 2011 to June 30, 2014, the date last insured.

In evaluating a claimant's symptoms, the ALJ must determine whether the claimant's statements about the intensity, persistence, and limiting effects of symptoms are consistent with the objective medical evidence and other evidence of record. SSR 16-3p, 2016 WL 1119029, at *7. If they are inconsistent, the ALJ "will determine that the individual's symptoms are less likely

to reduce his or her capacities to perform work-related activities." *Id.* Factors the ALJ should consider in determining whether a claimant's pain is in fact disabling include the claimant's efforts to find relief and willingness to try any treatment prescribed; a claimant's regular contact with a doctor; the possibility that psychological disorders combine with physical problems; the claimant's daily activities; and the dosage, effectiveness and side effects of the claimant's medication. *Keyes-Zachary v. Astrue*, 695 F.3d1156, 1167 (10th Cir. 2012); SSR 16-3p, *supra*, at *7; 20 C.F.R. § 404.1529(c)(3).

Consistency findings are "peculiarly the province of the finder of fact," and courts should "not upset such determinations when supported by substantial evidence." *Cowan v. Astrue*, 552 F.3d 1182, 1190 (10th Cir. 2008). Provided the ALJ sets forth the specific evidence he relies on in evaluating the consistency of the claimant's subjective complaints with other evidence, the ALJ "need not make a formalistic factor-by-factor recitation of the evidence." *Keys-Zachary*, 695 F.3d at 1167 (quotations omitted). "[C]ommon sense, not technical perfection, is [the reviewing court's] guide." *Id.*

Plaintiff argues that in determining that he can perform light exertion work, the ALJ relied too heavily on his activities of daily living—including that he mows his lawn for three hours weekly, does laundry and chores daily, goes square dancing with his wife weekly, walks five miles a day, drives and travels. R. 33-35, 170-172, 235, 239 266, 327, 456, 930. However, the ALJ is required to consider claimant's daily activities as part of the consistency analysis. SSR 16-3p, at *7. Plaintiff also contends the ALJ ignored his testimony at the first hearing that he had suffered from back pain for three or four years, that once a week he stays in bed all day due to depression and that he has "anger issues." Doc. 24 at 8.

The ALJ acknowledged Plaintiff's subjective complaints concerning his physical and mental impairments, but found the objective medical evidence contradicted those complaints. R. 451, 455-56. R. 232, 239, 245-46, 257-58, 266, 27, 330-31, 830. *See* 20 C.F.R. § 404.1529(c)(4) ("We will evaluate your statements in relation to the objective evidence"); *Huston v. Bowen*, 838 F.2d 1125, 1132 (10th Cir. 1988) (in assessing subjective complaints, an ALJ may consider "the consistency or compatibility of nonmedical testimony with objective medical evidence"). The ALJ found evidence that medications improved Plaintiff's symptoms undermined his subjective complaints. R. 245-46, 257, 327, 330, 451, 454-55, 830. *See* 20 C.F.R. § 404.1529(c)(3)(iv) (stating that an ALJ must consider the effectiveness of treatment); *Kelly v. Chater*, 62 F.3d 335, 338 (10th Cir. 1995) (fact that impairment was well-controlled supported ALJ's conclusion that the claimant was not disabled).

Plaintiff also faults the ALJ for giving "no weight" to the opinions Plaintiff's wife expressed in her Third-Party Function report. R. 187-194, 457. However, the ALJ explained in his Decision that he gave no weight to the opinions because they were contradicted by the record. Specifically, the wife's report that her husband was unable to dress, bathe, care for his hair, feed himself or use the toilet was contradicted by objective findings in the records that he is well groomed. R. 457.[3] Moreover, while she reported that Plaintiff was unable to dance, she also stated

---

[3] As the Magistrate Judge noted, the wife's Third-Party Report is somewhat unclear with respect to her answers to the Personal Care question. The question in the section states, "Explain how the illnesses, injuries, or conditions affect this person's ability to" perform the listed functions. She did not check the box that indicated "NO PROBLEM with personal care." And with respect to each of the individual abilities (*i.e.* Dress, Bathe, Care for hair, Shave, Feed self and use the Toilet), she wrote "Does Not." It is not clear whether she meant that his condition had no effect on those functions or that he was unable to perform them. However, even if the ALJ misinterpreted the wife's statements in this section, the ALJ gave two other reasons for assigning no weight to her opinion, which Plaintiff has not challenged, *i.e.*, she reported that the claimant is unable to dance, but then stated that he square danced once per week; and she stated that Plaintiff only walked one-half mile, but Plaintiff reported to his doctor that he was walking five miles pe day, seven days per week. R. 457 (citing Ex. 2F page 9).

that he square danced once per week. *Id.* Finally, while she stated that Plaintiff could walk one-half mile, the claimant reported he was walking five miles per day, seven days per week. *Id.*

### E. Failure to Obtain a Consultative Exam or Other Testing

Plaintiff asserts the ALJ erred by failing to order a consultative exam or further develop the record through additional testing. "The ALJ has a basic obligation in every social security case to ensure that an adequate record is developed during the disability hearing consistent with the issues raised." *Cowan v. Astrue*, 552 F.3d 1182, 1187 (quoting *Henrie v. U.S. Dep't of Health & Human Servs.*, 13 F.3d 359, 360-61 (10th Cir. 1993)). The "standard is one of reasonable good judgment," and the ALJ need not "exhaust every possible line of inquiry in an attempt to pursue every potential line of questioning." *Hawkins v Chater*, 113 F.3d 1162, 1168 (10th Cir. 1997).

An ALJ may elect to develop the record by obtaining a consultative exam. 20 C.F.R. § 404.1519a(b). A consultative exam "is often required" where (1) there is a direct conflict in the medical evidence requiring resolution, (2) the medical evidence in the record is inconclusive, or (3) additional tests are required to explain a diagnosis already contained in the record. *Hawkins*, 113 F.3d at 1166. An ALJ should order a consultative exam "when evidence in the record establishes the reasonable possibility of the existence of a disability and the result of the consultative exam could reasonably be expected to be of material assistance in resolving the issue of disability." *Id.* at 1169.

None of the situations described above applies in this case. Although Plaintiff asserts that testing is necessary to assess the severity of his mental impairments, nerve damage, diabetes-related fatigue and back pain, he has not shown that the evidence in this regard is inconclusive or that testing is necessary to explain these diagnoses. Moreover, any questions about the severity of Plaintiff's impairments are related to Plaintiff's own inconsistent statements (which the ALJ

addressed in his consistency analysis) and to the VA's disability determination, which the decision discussed in detail and found unpersuasive.

"The ALJ, not a physician is charged with determining a claimant's RFC." *Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004). *See also* 20C.F.R. § 404.1527(d)(2) (explaining that although an ALJ considers medical opinions in assessing RFC, the final responsibility for determining the RFC is reserved to the ALJ). The Court concludes that the burden to fully develop the record was met in this case, and the ALJ had sufficient information to determine Plaintiff's RFC based on treatment records, agency opinions and other non-medical evidence.

## IV. Conclusion

For the reasons set forth above, Plaintiff's objections to the Magistrate Judge's Report and Recommendation are overruled, the Report and Recommendation is adopted, and the Commissioner's decision is affirmed.

ENTERED this 1st day of April, 2020.

TERENCE C. KERN
United States District Judge